Georgia A. Staton, Bar #004863
Eileen Dennis GilBride, Bar #009220
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone: (602) 263-1700
Fax: (602) 200-7827
gstaton@jshfirm.com
egilbride@jshfirm.com

Patrice M. Horstman, Bar #005841
HUFFORD, HORSTMAN, ET AL.
120 N. Beaver Street
Post Office Box B
Flagstaff, Arizona 86002

Attorneys for Plaintiffs Red Mesa Unified School District and Cedar Unified School District

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Red Mesa Unified School District; Cedar Unified School District, <br><br> Plaintiffs, <br><br> v. <br><br> Sara Yellowhair; Helena Hasgood; Harvey Hasgood; Letitia Pete; and, Anslem Bitsoi, Casey Watchman, Peterson Yazzie, Woody Lee, Jerry Bodie, Victoria A. Dixon, Leffew R. Denny, and Evelyn Meadows, Current or Former Members of the Navajo Nation Labor Commission, <br><br> Defendants. | NO. <br><br> **COMPLAINT** |

**General Description of the Action**

1. Plaintiff Red Mesa Unified School District is an Arizona school district that operates within the geographical boundaries of the Navajo Nation. Plaintiff Cedar Unified School District is an Arizona school district that operates within the

geographical boundaries of the Navajo and Hopi Nations. After Plaintiffs terminated employees Sara Yellowhair, Helena Hasgood, Harvey Hasgood, and Letitia Pete (all members of the Navajo Nation) in accordance with Arizona law, Yellowhair, Hasgood, Hasgood and Pete brought claims against Plaintiffs before the Navajo Nation Labor Commission ("NNLC") alleging that Plaintiffs violated the Navajo Preference in Employment Act ("NPEA"). The NPEA requires employers to give preference in employment to Navajos and dictates that employers may not fire Navajo employees without "just cause." Plaintiffs now seek (a) declaratory relief in the form of an order declaring that the NNLC and the Navajo tribal courts lack jurisdiction over public school districts' employment decisions and practices conducted on the Navajo Reservation, when the Districts are fulfilling their state responsibilities to provide education for all Arizona citizens and (b) injunctive relief to bar further prosecution of those claims in the tribal courts due to the lack of jurisdiction.

2. The cases before the NNLC are titled *Yellowhair v. Red Mesa Unified School District*, NNLC No. 2005-020; and *Hasgood et al. v. Cedar Unified School District*, NNLC No. 2005-028.

3. Plaintiffs have exhausted their tribal remedies by having obtained a ruling on jurisdiction from the Navajo Supreme Court, which held (after consolidating the *Yellowhair* and *Hasgood et al*. cases) that the NNLC has jurisdiction to hear complaints alleging NPEA violations against Arizona public school districts. *See Cedar Unified School Dist. v. Navajo Nation Labor Commission*, No. SC-CV-53-06 (Nav. Sup. Ct. Nov. 21, 2007).

**The Parties**

4. Red Mesa Unified School District is located in Teec Nos Pos, Arizona. It was established under the powers of the Arizona Constitution and is a political subdivision of the State of Arizona organized under and governed by the laws of the State of Arizona for the purpose of the administration, support and maintenance of public schools. A.R.S. §15-101(21). As part of Arizona's Constitutional mandate to provide

2

education for all Arizona citizens, Ariz. Const. Art. 11, §1, Red Mesa operates within the boundaries of the Navajo Reservation.

5. Cedar Unified School District is located in Keams Canyon, Arizona. It was established under the powers of the Arizona Constitution and is a political subdivision of the State of Arizona, organized under and governed by the laws of the State of Arizona for the purpose of the administration, support and maintenance of public schools. A.R.S. §15-101(21). As part of Arizona's Constitutional mandate to provide education for all Arizona citizens, Ariz. Const. Art. 11, §1, Red Mesa operates within the boundaries of the Navajo and Hopi Reservations.

6. Yellowhair is a member of the Navajo Nation and a former employee of Red Mesa.

7. Helena Hasgood, Harvey Hasgood and Letitia Pete are members of the Navajo Nation and former employees of Cedar Unified.

8. Defendants Bitsoi, Watchman, Yazzie, Lee, Bodie, Dixon, Denny and Meadows are or were members of the Navajo Nation Labor Commission at the relevant times and, as such, are or were officers of the Navajo Nation government responsible for the enforcement of the NPEA. While the NNLC is similar to the federal Equal Employment Opportunity Commission, the NNLC is a fact-finding body and presides over trials. Appeals are taken to the Navajo Nation Supreme Court.

## Jurisdiction and Venue

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this action arises under the Constitution, laws, or treaties of the United States, *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985); and under 28 U.S.C. §2201 because it involves an actual controversy. The District Court reviews the Navajo Nation Supreme Court's determination of its and the NNLC's exercise of jurisdiction as a matter of federal law.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), because most or all of the Defendants reside in this District and the events giving rise to the claim occurred in this District.

**Factual Background: Yellowhair Case**

11. Yellowhair was employed as the Business Manager at Red Mesa for the school year 2003-2004. Though she was not a certificated administrator, she was given a certificated administrator's contract.

12. In her employment contract with Red Mesa, Yellowhair agreed (a) that her contract was subject to the applicable laws and regulations of the District and of the State of Arizona; (b) that the contract could be terminated as specified in the contract, and "pursuant to the laws of the State of Arizona and the rules and policies of the District"; (c) that the Governing Board "may terminate this Contract at any time for unprofessional conduct or other breach of this Contract"; and (d) that the contract was "governed by the laws of the State of Arizona and exclusively in its courts."

13. In August 2004, Red Mesa Superintendent Slowman-Chee discovered numerous financial and business-related discrepancies with Red Mesa's records, all of which directly arose from Yellowhair's failure to fulfill her job responsibilities, and which resulted in violations of state law, administrative regulations, and District policy.

14. In particular, Yellowhair had engaged in a pattern of financial mismanagement of District funds, including a pattern of not seeking Governing Board approval for numerous change orders and purchase orders; failing to comply with state rules and regulations regarding the disposition of District property; and failing to comply with state rules and regulations regarding procurement procedures.

15. Red Mesa conducted a full investigation, after which the Superintendent issued and delivered to Yellowhair a Notice of Intent to Dismiss and Statement of Charges for the possible termination of Yellowhair's employment. Pursuant to A.R.S. §15-539(G), and as set forth in the Notice of Intent to Dismiss, Yellowhair's

4

1  dismissal would become effective thirty (30) days after the date of service on Yellowhair, subject to her right to an appeal.

16. A.R.S. §§15-539 to 15-543 are the statutory provisions that afford a certificated employee the most extensive due process rights. These statutes applied to Yellowhair as a certified administrator and Red Mesa afforded her full due process rights.

17. Yellowhair appealed the Governing Board's decision and requested a hearing, pursuant to A.R.S. §15-539(G).

18. Red Mesa held a hearing at which Yellowhair was represented by counsel. On April 8, 2004, the hearing officer rendered a written recommendation that the Governing Board dismiss Yellowhair from her employment due to her failure to observe and comply with Arizona laws and District policies and regulations.

19. The District's Governing Board voted to accept the hearing officer's recommendation and to terminate Yellowhair.

20. Yellowhair had a statutorily mandated and exclusive remedy under A.R.S. §15-543(A) for appealing the Board's determination. That remedy was to file an appeal in the Superior Court in the county in which she was employed.

21. Yellowhair did not pursue her statutorily-mandated exclusive remedy. Instead, Yellowhair filed an Employment Charge with the Office of Navajo Labor Relations (ONLR), despite the fact that her employment contract required her to abide by Arizona law. The ONLR is like the EEOC in that it has the power to determine violations of Navajo Nation labor law.

22. The ONLR issued Yellowhair a Right to Sue letter, since the ONLR was unable to complete a probable cause determination as to whether Red Mesa violated the NPEA within the requisite 180 days.

23. On March 29, 2005, Yellowhair filed a complaint with the NNLC against Red Mesa. Red Mesa moved to dismiss the complaint on the grounds of res judicata, collateral estoppel, failure to state a claim, and lack of jurisdiction.

24. The NNLC denied the motion to dismiss and set the matter for hearing on September 13, 2005.

25. At the September 13, 2005 evidentiary hearing, Red Mesa renewed its motion to dismiss, which the NNLC denied.

26. Red Mesa then filed a Writ of Prohibition with the Navajo Supreme Court asking the Court to prevent the NNLC from hearing the matter, which was governed by Arizona law and which had already been decided via a due process termination hearing procedure mandated by Arizona law. Red Mesa argued that the NNLC action would exceed tribal authority, ignore the extensive due process already provided Yellowhair, and would potentially result in nullifying the previous decision.

27. The Navajo Supreme Court held that the NNLC had jurisdiction to hear Yellowhair's claim of wrongful discharge against the public school district in violation of the NPEA.

28. On or about February 11, 2009, during the NNLC's hearing on the merits of Yellowhair's claim, the NNLC declared Red Mesa to be in "default" because the Red Mesa School Board's representative was traveling to the hearing in a treacherous snowstorm which would cause her to be about 30 minutes late for the hearing. The NNLC thereafter entered a default judgment order against Red Mesa, finding in favor of Yellowhair, and requested both sides to submit briefs on Yellowhair's claimed damages.

29. The Defendants who are or were members of the NNLC exceeded their jurisdiction and the jurisdiction of the Navajo Nation by purporting to adjudicate Yellowhair's claim against Red Mesa.

**Factual Background: Hasgood Case**

30. Helena Hasgood was employed by Cedar Unified in the Business Office as an Accounting Technician. Harvey Hasgood was employed by Cedar Unified as a Mechanic II in the Transportation Department. Letitia Pete was employed by Cedar Unified as a Maintenance Secretary. All three were "classified" employees, meaning that

6

1  they had one-year contracts with Cedar Unified and were subject to different termination
2  appeal procedures than Yellowhair.

3      31.    Hasgood, Hasgood and Pete signed employment contracts with the
4  District for the 2002-03 school year. In the employment contracts, Hasgood, Hasgood and
5  Pete specifically agreed (a) to fulfill the requirements of the position as defined by the
6  Board of Education's job description, policies and procedures and by other applicable
7  state and federal laws, (b) to abide by the applicable laws of the State of Arizona, and the
8  State Board of Education's policies, rules and regulations, (c) to be subject to all
9  applicable conditions, obligations, responsibilities, rights and privileges as defined by
10 Federal and State law, and (d) that any action by the Board or its designee regarding
11 disciplinary actions or termination would be done in accordance with State law and Board
12 policies and would provide for applicable due process.

13     32.    Hasgood, Hasgood and Pete received Notices of Recommendation of
14 Termination pursuant to Arizona law and District Policy. The Notices of
15 Recommendation indicated that Hasgood, Hasgood and Pete had accessed pornographic
16 websites on a District computer, which was deemed to be a misuse of District property
17 and unprofessional conduct.

18     33.    On June 14, 2002, Hasgood, Hasgood and Pete each received a
19 Notice of Dismissal Hearing, which detailed the reasons for the recommendation of
20 dismissal and scheduled the hearing for June 18, 2002.

21     34.    The dismissal hearing was held on June 18, 2002 pursuant to A.R.S.
22 §§15-541 and 15-542 and District policy. On August 16, 2002, the hearing officer
23 rendered his written recommendation to terminate the employment of Hasgood, Hasgood
24 and Pete.

25     35.    On November 26, 2002, pursuant to Arizona law and District policy,
26 the Governing Board voted to accept the hearing officer's recommendation and to
27 terminate the employment of Hasgood, Hasgood and Pete.
28

7

36. For classified employees, District Policy and Arizona law provide that the Governing Board's decision is final. Arizona law provides no further appeal procedure for termination of a classified employee. A.R.S. §12-901. The exclusive statutorily-mandated remedy for a classified employee to contest a dismissal is to file a complaint in Arizona state court for wrongful termination.

37. Despite being fully informed of the mandatory and exclusive statutory procedure to pursue a claim as stated above, and despite having agreed in their employment contracts to abide by Arizona State law, Hasgood, Hasgood and Pete together filed a combined employment charge with the Office of Navajo Labor Relations (ONLR), alleging that Cedar Unified wrongfully terminated them in violation of the NPEA.

38. The ONLR issued Hasgood, Hasgood and Pete right to sue letters because it was unable to conduct a probable cause analysis within the requisite 180 days.

39. On or about May 13, 2005, Hasgood, Hasgood and Pete filed a complaint with the NNLC against Cedar Unified.

40. On May 21, 2005, Cedar Unified received a Notice of Hearing from the NNLC.

41. Cedar Unified moved to dismiss the matter, in part for lack of jurisdiction. The NNLC denied the motion.

42. Cedar Unified then filed a Writ of Prohibition with the Navajo Supreme Court asking the Court to prevent the NNLC from hearing the matter, which was governed by Arizona law and which had already been decided via a due process termination hearing procedure mandated by Arizona law. Cedar Unified argued that the NNLC action would exceed tribal authority, ignore the extensive due process already provided Hasgood, and would potentially result in nullifying the previous decision.

43. The Navajo Supreme Court held that the NNLC had jurisdiction to hear the complaint of Hasgood, Hasgood and Pete alleging wrongful discharge in violation of the NPEA.

44. The Defendants who are or were members of the NNLC exceeded their jurisdiction and the jurisdiction of the Navajo Nation by purporting to adjudicate the claim of Hasgood, Hasgood and Pete against Cedar Unified.

## COUNT ONE: DECLARATORY JUDGMENT

45. Paragraphs 1 through 44 are incorporated herein by reference.

46. Plaintiffs Red Mesa and Cedar Unified are "interested parties" within the meaning of 28 U.S.C. §2201. Plaintiffs seek a declaration of their rights and legal relations concerning whether they are subject to the NNLC's purported adjudication of Yellowhair's and Hasgood, Hasgood and Pete's claims against them.

47. There is an actual controversy within the jurisdiction of this Court because declaratory and injunctive relief will effectively adjudicate the rights of the parties.

48. Specifically, Plaintiffs request a declaration that:

    a. Yellowhair and Hasgood, Hasgood and Pete are prohibited from asserting their claims against Plaintiffs in either the NNLC or the Navajo Nation Supreme Court ("NNSC");

    b. The Defendant members of the NNLC have exceeded their jurisdiction and the jurisdiction of the Navajo Nation in purporting to adjudicate the claims of Yellowhair, Hasgood, Hasgood and Pete against Plaintiffs;

    c. The Defendant members of the NNLC are prohibited from adjudicating any claims by public school employees against Plaintiffs;

    d. Any judgment, order, decision, decree, or the like that Yellowhair and/or Hasgood, Hasgood and Pete might procure from the NNLC, the NNSC, or which the NNLC and/or the NNSC might issue in the future with respect to the claims of Yellowhair and/or Hasgood, Hasgood and Pete are null, void, and of no force and effect;

   e. The efforts of Yellowhair and/or Hasgood, Hasgood and Pete to pursue their claims against Plaintiffs in the NNLC and/or the NNSC would violate Plaintiffs' rights, privileges, and immunities guaranteed Plaintiffs by the Constitution, treaties, and laws of the United States and the State of Arizona; and

   f. The efforts of the Defendant NNLC members to adjudicate the claims of Yellowhair and/or Hasgood, Hasgood and Pete against Plaintiffs would violate Plaintiffs' rights, privileges, and immunities guaranteed them under the Constitution, treaties, and laws of the United States and the State of Arizona.

## COUNT TWO: INJUNCTION

49. Plaintiffs incorporate paragraphs 1 through 48 herein by reference.

50. Unless preliminarily and permanently enjoined, Yellowhair and/or Hasgood, Hasgood and Pete and the Defendant members of the NNLC will proceed with their actions to adjudicate the claims of Yellowhair and Hasgood, Hasgood and Pete against Plaintiffs without jurisdiction over the subject matter of the claims against Plaintiffs.

51. The actions and threatened actions of Yellowhair, Hasgood, Hasgood and Pete and the Defendant NNLC members will cause Plaintiffs irreparable injury.

52. Plaintiffs lack an adequate remedy at law, other than by this suit.

**WHEREFORE**, Plaintiffs respectfully request this Court to grant judgment as follows:

1. For a declaratory judgment stating that:

   a. Yellowhair and Hasgood, Hasgood and Pete are prohibited from asserting their claims against Plaintiffs in either the NNLC or the NNSC;

   b. The Defendant members of the NNLC have exceeded their jurisdiction and the jurisdiction of the Navajo Nation in attempting to adjudicate the claims of Yellowhair and Hasgood, Hasgood and Pete against Plaintiffs;

    c.  The Defendant members of the NNLC are prohibited from adjudicating any employment claims between Plaintiffs and their employees;

    d.  Any judgment, order, decision, decree or the like that Yellowhair and/or Hasgood, Hasgood and Pete might procure from the NNLC or NNSC, or which the NNLC or NNSC might issue in the future with respect to those claims is null, void, and of no force and effect;

    e.  The efforts of Yellowhair and/or Hasgood, Hasgood and Pete to pursue their claims against Plaintiffs in the NNLC or NNSC would violate Plaintiffs' rights, privileges, and immunities guaranteed them under the Constitution, treaties and laws of the United States and the State of Arizona; and

    f.  The efforts of the Defendant NNLC members to adjudicate the claims of Yellowhair and/or Hasgood, Hasgood and Pete against Plaintiffs would violate Plaintiffs' rights, privileges, and immunities guaranteed them under the Constitution, treaties, and laws of the United States and the State of Arizona.

  2.  For a preliminary and permanent injunction, independent and in furtherance of the requested declaratory judgment, enjoining:

    a.  Yellowhair and Hasgood, Hasgood and Pete from prosecuting or pursuing their claims in the NNLC and/or NNSC or any other Navajo Nation court or forum;

    b.  The Defendant NNLC members from adjudicating any employment claims between Plaintiffs and their employees; and

    c.  The Defendant NNLC members from continuing to adjudicate the claims of Yellowhair and Hasgood, Hasgood and Pete against Plaintiffs.

  3.  For Plaintiffs' costs incurred in this matter; and

  4.  For such further relief as the Court deems just and proper in the circumstances.

11

RESPECTFULLY SUBMITTED this 29th day of April, 2009.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/Eileen Dennis GilBride
Eileen Dennis GilBride
Georgia A. Staton
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Attorneys for Plaintiffs Red Mesa Unified
School District and Cedar Unified School
District

ORIGINAL electronically filed
this 29th day of April, 2009.

2043321.1