**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Red Mesa Unified School District, et al., | ) |
| Plaintiffs, | ) No. CV-09-8071-PCT-PGR |
| vs. | ) |
| Sara Yellowhair, et al., | ) ORDER |
| Defendants. | ) |

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 47) and Navajo Nation Labor Commission Defendants' Cross-Motion for Summary Judgment (Doc. 54), both of which relate to the issue of whether the Navajo Nation has regulatory and adjudicatory authority over personnel decisions made by the plaintiff public school districts.  Having considered the parties' memoranda in light of the record, the Court finds that there are no genuine issues of material fact and that the  plaintiffs' summary judgment motion should be granted pursuant to Fed.R.Civ.P. 56 as a matter of law.[1]

---

[1]    While some of the defendants have requested oral argument, the Court has concluded that a hearing would not significantly aid the decisional process.

Background

Plaintiffs Red Mesa Unified School District ("Red Mesa") and the Cedar Unified School District  ("Cedar") are both Arizona political subdivisions. *See* A.R.S. § 15-101(21).  Pursuant to their mandates under Arizona constitutional and statutory law, they operate public schools within the exterior boundaries of the Navajo and/or Hopi reservations on tribal trust land leased from the Navajo Nation.[2]   Defendants Sara Yellowhair, Helena Hasgood, Harvey Hasgood, and Letitia Pete are members of the Navajo Nation.  Yellowhair, who had an employment contract with Red Mesa for the 2003-2004 school year as its business manager, was terminated by Red Mesa's governing board in May, 2004 after having been found through an administrative proceeding of spending more than two million dollars in school district funds without proper approval and authorization. The Hasgoods and Pete, who had employment contracts with Cedar for the 2002-2003 school year, were terminated by Cedar's governing board in November, 2002 after having been found through an administrative proceeding of accessing pornographic websites on a school computer in violation

---

[2]

Red Mesa is located solely on the Navajo reservation and Cedar is located on both the Navajo and Hopi reservations.

Red Mesa's facility is on land that the Navajo Nation originally leased to the Chinle Unified School District in 1966.  The lease was assigned by the Chinle district to Red Mesa in 1984.  The lease subsequently expired in 1991 and Red Mesa currently operates the facility on trust land without an approved lease from the Navajo Nation.

Cedar's facility is on land leased by the Navajo Nation to the Hopi Public School District No. 25 in 1980; the lease is still in effect.  Since no party has stated otherwise, the Court presumes that Cedar is a successor in interest to the Hopi district.

of school district policy.[3]

Instead of appealing their terminations pursuant to the judicial process mandated by Arizona law, Yellowhair, the Hasgoods, and Pete ("the employee defendants") filed charges in 2005 with the Office of Navajo Labor Relations ("ONLR"), which is a Navajo administrative tribunal, alleging that they were wrongfully terminated in violation of the Navajo Preference in Employment Act ("NPEA"), a Navajo tribal statute defining the responsibilities of all employers and employees within the Navajo Nation that in relevant part requires employers to provide "just cause" when terminating employees.  After the ONLR issued them right to sue letters, the employee defendants filed complaints regarding their terminations with the Navajo Nation Labor Commission ("NNLC"), which is a tribal administrative tribunal that hears complaints concerning violations of the NPEA's "just cause" requirement.  When the NNLC denied their requests to dismiss the Navajo administrative proceedings for lack of jurisdiction, Red Mesa and Cedar filed separate writs of prohibition with the Navajo Nation Supreme Court, wherein they asked the court to prevent the NNLC from proceeding with the administrative hearings because the termination issues were governed by Arizona law and had already been decided via a due process termination procedure mandated by Arizona law.  In an opinion issued on November 21, 2007, the Navajo Nation Supreme Court ruled that the NNLC had jurisdiction to apply the NPEA to Red Mesa and Cedar.  At the time the pending summary judgment motions were filed, the NNLC proceedings against Red Mesa and Cedar over the terminations were

---

[3]

At the time of the terminations, all but one of the members of the Red Mesa and Cedar's governing boards were Navajos.

still ongoing.[4]

In their complaint, Red Mesa and Cedar named various current or former members of the NNLC as defendants in addition to the employee defendants.[5] The complaint, which seeks both declaratory and injunctive relief, generally requests that the Court prevent the employee defendants from adjudicating their claims before either the NNLC or the Navajo Nation Supreme Court, prevent the NNLC defendants from continuing to adjudicate the claims of the employee defendants, and render null and void any decision issued by either the NNLC or the Navajo Nation Supreme Court on the employee defendants' claims.

While Red Mesa and Cedar have filed a summary judgment motion, as have the NNLC defendants, the Hasgoods have just filed a response to Red Mesa and Cedar's summary judgment motion, although their response is in effect limited to just the issue of tribal jurisdiction over Cedar; Yellowhair and Pete have not participated in this action.[6]

---

[4]

It is undisputed that the merits of the underlying employment disputes are not material to the issue of tribal jurisdiction over Red Mesa and Cedar's personnel decisions.

[5]

The remaining NNLC defendants are Casey Watchman, Peterson Yazzie, Woody Lee, Jerry Bodie, and Evelyn Meadows.

[6]

The Hasgoods responded to Red Mesa and Cedar's summary judgment motion notwithstanding that the Clerk of the Court entered default against them (as well as against Yellowhair and Pete) on September 10, 2009 (Doc. 33), some five months before their response was filed. While the Hasgoods' failure to formally seek to set aside the default entered against them, as they should have, is not explained in the record, in light of Red Mesa and Cedar's concerns expressed at the Scheduling Conference, held on September 21, 2009, regarding the validity of the service on the employee defendants and

(continued...)

Discussion

Red Mesa and Cedar, which are nonmembers of the Navajo Nation by virtue of their status as Arizona political subdivisions, have challenged the authority of the defendants to invoke Navajo tribal law to review their personnel decisions.  The burden of establishing the existence of tribal jurisdiction falls on the defendants. Plains Commerce Bank v. Long Family Land and Cattle Co.,, __ U.S. __, 128 S.Ct. 2709, 2720 (2008).[7]

Since the defendants do not assert that any federal statute or treaty empowers the Navajo Nation with regulatory or adjudicatory authority over the employment decisions underlying this action, any such authority must stem from the tribe's retained inherent sovereignty.[8]  As the Supreme Court has stated

_____

[6](...continued)
Red Mesa and Cedar's failure to object to the Hasgoods' answer, filed on December 15, 2009, or to the Hasgoods' summary judgment participation, the Court will presume that the parties have informally agreed that the default entered against the Hasgoods is not valid, or at least should be ignored for purposes of the summary judgment motions.

[7]
It is undisputed that the issue before the Court constitutes a federal question, Plains Commerce Bank, 128 S.Ct. at 2717, and that Red Mesa and Cedar have, as a result of the ruling issued by the Navajo Nation Supreme Court, exhausted their tribal remedies regarding the tribal jurisdiction issue.  Red Mesa and Cedar and the NNLC defendants also agree that the issuance of a summary judgment is appropriate as there are no disputed issues of material fact; while the Hasgood defendants assert that genuine issues of material fact exist that prevent summary judgment, they do not sufficiently establish the existence of any such material facts and the Court concludes that none exist.
The Court notes that it has intentionally not discussed all arguments raised by the parties and those arguments not discussed are considered by the Court to be unnecessary to the resolution of the parties' motions.

[8]
The Tenth Circuit has noted that "Congress has passed no law which
(continued...)

regarding such sovereign powers, "Indian tribes' regulatory authority over

nonmembers is governed by the principles set forth in *Montana v. United States*,

450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)[.]" Nevada v. Hicks, 533

U.S. 353, 358, 121 S.Ct. 2304, 2309 (2001) (Supreme Court reiterated that

Montana was the "pathmaking case" on the subject of tribal civil authority over

nonmembers).[9] Montana's general rule is that the inherent sovereign powers of

_____

[8](...continued)
permits the Navajo Nation to exercise regulatory authority over nonmember
entities or individuals who employ members of the tribe within the confines of the
reservation; nor has it passed a broader statute which arguably encompasses
nonmember employers[.]" MacArthur v. San Juan County, 497 F.3d 1057, 1068
(10th Cir.2007), *cert. denied*, 552 U.S. 1181 (2008).

[9]

       The Court is unpersuaded by the NNLC defendants' argument that the
resolution of the  jurisdictional issue is governed by Merrion v. Jicarilla Apache
Tribe, 455 U.S. 130, 102 S.Ct. 894 (1982), rather than by the principles set forth
in Montana and its progeny.  In Merrion, which involved a tribe's power to impose
a severance tax on mining activity by non-Indian, private actors who were
operating on tribal lands pursuant to mineral leases issued by the tribe, the
Supreme Court noted that "[n]onmembers who lawfully enter tribal lands remain
subject to the tribe's power to exclude them.  This power necessarily includes the
lesser power to place conditions on entry, on continued presence, or on
reservation conduct, such as a tax on business activities conducted on the
reservation."  455 U.S. at 144, 102 S.Ct. at 905.  The Supreme Court, in
upholding tribal jurisdiction over the nonmembers' commercial activities,
concluded that the tribe's power to tax nonmembers derived not just from the
power to exclude non-Indians from tribal lands, but also from the tribe's power of
self-government.  The NNLC defendants argue that since the Navajo Nation
retains the power to exclude Red Mesa and Cedar because they are lessees of
tribal land, it may, pursuant to Merrion, regulate them to the same extent as any
other nonmember utilizing tribal land.  Based on the Supreme Court's subsequent
interpretations of Montana, the Court cannot agree that Merrion provides a basis
for tribal jurisdiction over Red Mesa and Cedar independent of Montana's general
presumption against such jurisdiction. *See e.g.*, Water Wheel Camp Recreational
Area, Inc. v. LaRance, 2009 WL 3089216, at *11 (D.Ariz. Sept. 23, 2009) (Court
noted that "the Supreme Court has made clear that the *Montana* framework
(continued...)

1   an Indian tribe do not extend to the activities of non-Indians who come within its

2   borders. Montana v. United States, 450 U.S. at 565, 101 S.Ct. at 1258.  This

3   presumption, which limits both a tribe's legislative and adjudicatory authority over

4   nonmembers, Plains Commerce Bank, 128 S.Ct. at 2720 (Supreme Court

5   reaffirmed the principle that "a tribe's adjudicatory jurisdiction does not exceed its

6   legislative authority."); Strate v. A-1 Contractors, 520 U.S. 438, 453,117 S.Ct.

7   1404, 1413 (1997) (Supreme Court extended Montana's framework, originally

8   applied as a measure of a tribe's civil regulatory jurisdiction, to limit a tribe's civil

9   _____

10          [9](...continued)
    governs a tribe's exercise of its inherent sovereign powers, including its power to
11   exclude nonmembers from tribal land[,]" and that the Supreme Court's decision in
    Plains Commerce Bank "suggests that a tribe's inherent power to exclude
12   nonmembers is one of the powers regulated by the *Montana* framework, not a
    power independent of it.")  The Supreme Court's decision in Hicks supports the
13   conclusion that a tribe's power to exclude nonmembers, regardless of the
    ownership status of the land on which the activities sought to be regulated
14   occurred, is not independent of Montana.  In Hicks, which involved the issue of
    tribal court jurisdiction over a tribal member's civil rights and tort claims filed
15   against state officials arising from their execution of a search warrant on tribal
    land, the Supreme Court applied the Montana test to determine that tribal
16   jurisdiction did not exist; in so doing, it overturned the underlying Ninth Circuit
    decision, Nevada v. Hicks, 196 F.3d 1020 (9th Cir.1999), that had rejected the use
17   of the Montana presumption against tribal jurisdiction in favor of determining that
    tribal jurisdiction existed because the tribe's power to exclude the state officers
18   from Indian-owned, Indian-controlled land implied its authority to regulate the
    behavior of nonmembers on that land.  The Ninth Circuit's view that Montana was
19   applicable only when the nonmembers' activities sought to be regulated occurred
    on non-tribal lands was rejected by the Supreme Court, which determined that
20   Montana applied notwithstanding the Indian-owned status of the land.  While
    ownership status of land was once necessarily dispositive in determining the
21   propriety of tribal jurisdiction over nonmembers, it is now only one factor to
    consider. Hicks, 533 U.S. at 360, 121 S.Ct. at 2310.  While land ownership status
22   may still may be dispositive for Montana purposes under certain circumstances,
    the fact that Red Mesa and Cedar are tribal lessees is not dispositive of the
23   jurisdictional question at issue.

24

25

26

                                          - 7 -

1  adjudicatory jurisdiction), applies even when the activities of nonmembers sought
2  to be regulated occurred on land owned by the tribe. Hicks, 533 U.S. at 360, 121
3  S.Ct. at 2310 (In rejecting the argument that a tribe has regulatory jurisdiction
4  over nonmembers on reservation lands owned by the tribe simply because of that
5  ownership status, the Supreme Court stated that "[t]he existence of tribal
6  ownership is not alone enough to support regulatory jurisdiction over
7  nonmembers."); MacArthur v. San Juan County, 497 F.3d at 1069 ("The notion
8  that *Montana*'s applicability turns, in part, on whether the regulated activity took
9  place on non-Indian land was finally put to rest in *Hicks*.")  In the absence of any
10  controlling provisions in treaties and statues, the Montana presumption is subject
11  to only two narrow exceptions: the first exception relates to nonmembers who
12  enter into consensual relationships with the tribe or its members, and the second
13  exception concerns activity that directly affects the tribe's political integrity,
14  economic security, health, or welfare.  Montana, 450 U.S. at 565-66, 101 S.Ct. at
15  1258.  The Supreme Court has made it clear that the Montana exceptions "are
16  limited ones and cannot be construed in a manner that would swallow the rule or
17  severely shrink it." Plains Commerce Bank, 128 S.Ct. at 2720 (internal citations
18  and quotation marks omitted).

19      At issue here is only the first Montana exception, as the defendants do not
20  argue that the second exception as any applicability to this action.  The first
21  exception arises from the Montana court's statement that "[a] tribe may regulate,
22  through taxation, licensing, or other means, the activities of nonmembers who
23  enter consensual relationships with the tribe or its members, through commercial
24  dealings, contracts, leases, or other arrangements." Montana, 450 U.S. at 565,
25  101 S.Ct. at 1258.  The NNLC defendants argue in part that Red Mesa and
26

- 8 -

1   Cedar have consented to the Navajo Nation's jurisdiction through their leases

2   allowing them to place their schools on tribal land, and the Hasgood defendants

3   argue that consent to tribal jurisdiction exists because Cedar leased land from the

4   Navajo Nation for its school, entered into employment contracts with tribal

5   members, and has extensive commercial contacts with the Navajo Nation

6   stemming from its school operations.  The Court is not persuaded that any of

7   these arguments are sufficient to overcome Montana's presumption against tribal

8   jurisdiction.

9        Assuming that Red Mesa and Cedar have, in general terms, consensual

10  relationships with the Navajo Nation and the employee defendants,

11  notwithstanding that Red Mesa and Cedar argue that their relationships are in

12  effect involuntary because they stem from their state-mandated duty to educate

13  reservation children, these relationships are not by themselves sufficient to

14  establish tribal jurisdiction through Montana's first exception.  The Court need not

15  determine in this case what the precise limits may be of the Navajo Nation's

16  authority to regulate employment relations between non-Indian employers and

17  Indian employees since the Court believes that the dispositive factor here is that

18  Red Mesa and Cedar are not private actors for purposes of Montana - they are

19  instead political subdivisions of the state of Arizona.  Red Mesa and Cedar argue,

20  and the Court concurs, that there is a fundamental difference for tribal

21  jurisdictional purposes between governmental actors constitutionally mandated to

22  enter tribal lands to fulfill a governmental obligation and private actors operating

23  commercial enterprises on tribal lands and that the former is not the kind of

24  consensual relationship that subjects a nonmember to tribal jurisdiction over

25  decisions unrelated to the tribal land.  Even if the consensual relationship

26

exception were to extend under some circumstances to state actors based on the

existence of a state-tribe contract, an issue not resolved in Hicks,[10] the

defendants have not persuaded the Court that the first Montana exception can

properly be extended to reach the actions here of Red Mesa and Cedar,

regardless of their status as tribal lessees, since both made the employment

decisions at issue while operating in their governmental capacities pursuant to

their state constitutionally-imposed mandate to operate a public school system

within the reservation boundaries.

This governmental/private actor dichotomy was noted in Hicks in reference

to the first exception when it observed that the Montana court

> obviously did not have in mind States or state officers acting in their
> governmental capacity; it was referring to private individuals who
> voluntarily submitted themselves to tribal regulatory jurisdiction by
> the arrangements that they ... entered into.  This is confirmed by the
> fact that all four of the cases in the immediately following citation
> involved private commercial actors.

Hicks, 533 U.S. at 372, 121 S.Ct. at 2316.  Other courts have also recognized the

distinction between private actors and government actors for purposes of

Montana's first exception. See e.g., MacArthur v. San Juan County, 497 F.3d

1057 at 1073-74 (In concluding that the Navajo Nation did not possess regulatory

authority over employment-related claims made to the ONLR by terminated

_____

[10]

The Supreme Court in  Hicks noted that

> [w]hether contractual relations between State and tribe can expressly
> or impliedly confer tribal regulatory jurisdiction over nonmembers -
> and whether such conferral can be effective to confer adjudicative
> jurisdiction as well - are questions that may arise in another case, but
> are not at issue here.

533 U.S. at 372, 121 S.Ct. at 2317.

1   Navajo employees of a special health service district, a political subdivision of the

2   state of Utah, the court stated that "[w]e too adhere to the distinction between

3   private individuals or entities who voluntarily submit themselves to tribal

4   jurisdiction and 'States or state officers acting in their governmental capacity[,]'"

5   and concluded that the employment relationships between the state health district

6   and its Navajo employees "were not 'private consensual relationships' in any

7   sense of the term and do not fall within the first Montana exception.") (emphasis

8   in original); County of Lewis v. Allen, 163 F.3d 509, 515 (9th Cir.1998) (en banc)

9   (In concluding that a tribal court had no jurisdiction over a tribal member's tort

10  claim against a deputy sheriff for actions taken on reservation land pursuant to a

11  state-tribal law enforcement agreement, the court determined that the agreement

12  between the state and the tribe did not qualify as a consensual relationship of the

13  type giving rise to tribal regulatory authority over a non-Indian because

14  "Montana's exception for suits arising out of consensual relationships has never

15  been extended to contractual agreements between two government entities[.]")

16       The NNLC defendants also argue that Red Mesa and Cedar have

17  consented to tribal jurisdiction through their continued participation in their NNLC

18  cases after the Navajo Nation Supreme Court ruled that the NNLC had

19  jurisdiction over the employee defendants' termination-related claims.  The Court

20  finds this argument to be unavailing.  While Red Mesa and Cedar continued to

21  defend themselves before the NNLC, they did so after the Navajo Nation

22  Supreme Court refused their requests to stay the NNLC proceedings pending this

23  Court's resolution of the tribal jurisdiction issue, and they continued to protest the

24  NNLC's jurisdiction over them.  The Court agrees with Red Mesa and Cedar that

25  continuing to protect their rights before the NNLC while challenging tribal

26

jurisdiction in federal court cannot amount to consent to tribal jurisdiction. *See* Town Pump, Inc. v. LaPalante, 2010 WL 3469578, at *1 (9th Cir. Sept. 3, 2010) (In finding a lack of tribal jurisdiction under Montana's first exception notwithstanding that the nonmember plaintiff had previously commenced litigation in tribal court, the court stated that "[a] nonmember's consensual relationship in one area ... does not trigger tribal civil authority in another - it is not 'in for a penney, in for a Pound'" (quoting Atkinson Trading Co. v. Shirley, 532 U.S. 645, 656, 121 S.Ct. 1825, 1833-34 (2001)), and that being involuntarily haled into tribal court as a defendant does not meet the consent prong of the Montana exceptions); *see also*, Plains Commerce Bank, 128 S.Ct. at 2727 (The fact that a nonmember sought a tribal court's aid in serving process on tribal members in one matter does not constitute consent to future litigation in tribal court as a defendant, especially when the nonmember contends that the tribal court lacks jurisdiction over it.)

Based on the foregoing, the Court concludes as a matter of law that the Navajo Nation has no regulatory or adjudicative jurisdiction over Red Mesa and Cedar's employment-related decisions underlying this action.  Since tribal jurisdiction is lacking, the Court agrees with Red Mesa and Cedar that the employee defendants should be barred from further prosecuting their termination-related claims before the NNLC or the Navajo Nation Supreme Court and that the NNLC defendants should be barred from any further adjudication of those claims. Therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 47) is granted.

IT IS FURTHER ORDERED that Navajo Nation Labor Commission

- 12 -

1  Defendants' Cross-Motion for Summary Judgment (Doc. 54) is denied.

2        IT IS FURTHER ORDERED that defendants Sara Yellowhair, Helena

3  Hasgood, Harvey Hasgood, and Letitia Pete are enjoined from any further

4  prosecution of their employment termination-related claims before the Navajo

5  Nation Labor Commission or the Navajo Nation Supreme Court or any other

6  Navajo Nation tribal court or administrative tribunal, and that Navajo Nation Labor

7  Commission defendants Casey Watchman, Peterson Yazzie, Woody Lee, Jerry

8  Bodie, and Evelyn Meadows are enjoined from any further adjudication of the

9  employment termination-related claims of Sara Yellowhair, Helena Hasgood,

10  Harvey Hasgood, and Letitia Pete.

11        IT IS FURTHER ORDERED that plaintiffs Red Mesa Unified School District

12  and Cedar Unified School District, after consultation with the remaining

13  defendants, shall submit a proposed form of judgment no later than October 22,

14  2010.[11]   Any objections by the defendants to the proposed form of judgment shall

15  be filed no later than November 8, 2010.

16        DATED this 28th day of September, 2010.

18        _____

19        Paul G. Rosenblatt
        United States District Judge

_____

[11]

25        The plaintiffs shall state in their proposed form of judgment submission
26  whether or not any defendant will object to the proposed judgment.

- 13 -